IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Case No. 1:15-cr-21 (WLS) |
| | : | |
| LEONARDO HERNANDEZ TRIANA and YADINA VALDES DIAZ, | : | |
| | : | |
| Defendants. | : | |

## **ORDER**

Before the Court are Defendants Hernandez Triana's and Valdes Diaz's Motions to Suppress. (Docs. 26, 42.) The Court held an evidentiary hearing on the motions on September 17, 2015. During the hearing, the Court directed the Defendants to submit additional briefing no later than ten days after the hearing and the Government to submit a responsive brief no later than seven days after receipt of the Defendants' briefs.

Defendant Hernandez Triana timely filed a supporting brief on September 28, 2015. (Doc. 46.) Defendant Valdes Diaz filed an untimely supporting brief on September 30, 2015. (Doc. 48.) The Government filed a responsive brief on October 14, 2015, sixteen days after Hernandez Triana timely filed his brief.[1] (Doc. 51.) Neither the Government nor Valdes Diaz provided any explanation for their untimely filings; however, the Court, in its discretion and in the interest of justice, will consider them. The Court finds that the Motions to Suppress are now ripe for review.

**I.    Factual Background**

The Court makes the following factual determinations based on the evidence presented during the September 17, 2015 evidentiary hearing, At the hearing, the

---

[1] Unfortunately the Government's brief addressed only one argument, which was not raised by either Defendant, and in no way responded to the arguments raised by Defendants in their briefing; therefore, limited to its content, the brief was not responsive to Defendants' briefs. (*See* Docs. 46, 48, 51.)

Government called three Georgia State Patrol officers, Dwayne Massey, Rodney Harding, and Raul Mejia, to testify and introduced the dash cam video from Massey's patrol car.

On October 31, 2014, Massey conducted a traffic stop on I-75 in Turner County, Georgia. Massey pulled over a pickup truck for having an obstructed license plate in violation of Georgia law. Defendant Hernandez Triana was the driver, and Defendant Valdes Diaz was the passenger. Massey asked Hernandez Triana to step out of the vehicle. Massey pointed to the license plate and explained that the tinted cover was illegal. Massey asked for both Hernandez Triana and Valdes Diaz's identification; Valdes Diaz stated the she did not have any with her but gave Massey her name. Massey returned to his patrol car to run a query on the identification information he got from Hernandez Triana and Valdes Diaz and to run a criminal history check on Hernandez Triana.

At approximately minute 11:30 of the dash cam video, a printer can be heard inside Massey's patrol car, which Massey testified was the sound of a printer printing the warning ticket and the search consent form. Several minutes later, Massey exited his vehicle with a warning ticket and consent form in hand. Hernandez Triana exited his vehicle. Massey explained that a Spanish speaking officer was on the way and asked Hernandez Triana where he was taking the freezer in the back of the truck. Hernandez Triana stated that he was taking it to Bowling Green, Kentucky. Massey then explained the warning ticket to Hernandez Triana and, at approximately minute 14:25 on the video, handed him the ticket.

Massey then told Hernandez Triana that transporting large objects can be an indicator of illegal drug trafficking and asked Hernandez Triana if he had any objections to a search of his vehicle. Hernandez Triana said, "No, nothing." Massey then produced a consent search form written in English and told Hernandez Triana twice in English that he did not have to sign it. Then Mejia, a Spanish-speaking officer, arrived. Mejia explained in Spanish the purpose of the search was to look for drugs, firearms, and contraband inside the vehicle. Hernandez Triana stated, "Not a problem" and signed a consent form written in English. Mejia did not translate the consent form to Hernandez Triana. Hernandez Triana was never informed in Spanish or English that he had a right to refuse consent. Hernandez Triana signed the consent form at approximately minute 16:11 of the dash cam video.

2

Massey and Harding, a third officer who had by then arrived on the scene, searched the vehicle. They discovered Walmart gift cards and a card skimmer device within a duffel bag inside the vehicle at approximately minute twenty of the dash cam video. Hernandez Triana and Valdes Diaz were arrested and taken to the Ashburn Police Department.

## II.     Validity of Hernandez Triana's Consent to Search the Vehicle

The Defendants move to suppress items seized from the vehicle during the October 31, 2014 traffic stop. The Government argues that Hernandez Triana consented to the search when he signed a consent form written in English. (Doc. 28 at 5.) The Defendants contend that this consent was invalid because Hernandez Triana, a Spanish-speaker, was "never fully advised of his right to refuse the search of his vehicle, the scope of his consent, the consequences of his waiver, and his right to refuse the search." (Doc. 46 at 2.)

"[A] consent search is a valid exception to the Fourth Amendment's warrant and probable cause requirements." *United States v. Suarez*, 694 F.Supp. 926, 932 (S.D. Ga. 1988) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973)). "When a prosecutor seeks to rely upon consent to justify the lawfulness of a search, he has the burden of proving that the consent was, in fact, freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1969). Whether consent to search was freely and voluntarily given is a case-by-case determination based on the "totality of all the circumstances." *Bustamonte*, 412 U.S. at 227.

In *Bustamonte*, the Supreme Court held that the following factors are relevant in determining whether consent to search was freely and voluntarily given: the person's youth, his lack of education, evidence of the person's low intelligence, the existence of advice as to the nature of the constitutional right implicated, the length of the detention preceding the request for consent, the nature of prior questioning, the environment, and whether any physical punishment was involved. *Id.* at 226. A defendant's "knowledge of a right to refuse is not a prerequisite of a voluntary consent," but it is a factor to consider when evaluating voluntariness. *Id.* at 234; *United States v. Purcell*, 236 F.3d 1274, 1281 (11th Cir. 2001). Ultimately, the determination must accommodate both "the legitimate need for such searches and the equally important requirement of assuring the absence of coercion." *Bustamonte*, 412 U.S. at 234.

The Court agrees with the Defendants that the Government cannot rely on the terms of the English-language consent form because none of that form was translated to Spanish for Hernandez Triana. However, the Court must consider whether Hernandez Triana's oral consent, expressed both to Massey and Mejia, was valid. When asked by Massey if he had any objections to a search of the vehicle for items like illegal drugs, Hernandez Triana stated, "No, nothing," a response that does not indicate full comprehension of Massey's question. However, when Mejia explained in Spanish that the purpose of the search would be to look for drugs, firearms, and other contraband, Hernandez Triana stated, in English, "No problem."

The Court finds no evidence of coercion; the officers were friendly and not aggressive or threatening. Hernandez Triana was not a youth and did not appear to be of low intelligence. The length of the detention up to the time Hernandez Triana gave consent was around sixteen minutes. While it is clear that no one explained to Hernandez Triana in Spanish that he had a right to refuse consent, the Court finds that the other factors and the overall circumstances weigh in favor of finding that Hernandez Triana's consent was freely and voluntarily given. *United States v. Zapata*, 180 F.3d 1237, 1242 (11th Cir. 1999) ("The mere fact that [the officer] did not inform [the defendant] of his right to refuse consent, given the lack of any coercive behavior on [the officer's] part, is insufficient to render [the defendant's] consent involuntary.").

Finally, the Court addresses the argument, to the extent it may have been alluded to by the Defendants, that Valdes Diaz's consent was needed in addition to or instead of Hernandez Triana's consent. (*See* Docs. 46 at 6; 51.) At the evidentiary hearing, the Government introduced a copy of the vehicle registration, which shows that the vehicle was registered in Valdes Diaz' name. In *United States v. Dunkley*, the Eleventh Circuit reasoned, "It is clear . . . that even if the owner/lessee is present as a passenger, the driver of a vehicle has some amount of joint access to the vehicle, and, in fact, the driver has immediate control over the vehicle." 911 F.2d 522, 526 (11th Cir. 1990). The court went on to hold that where a driver who was not the owner of a vehicle consented to a search and the actual owner of the vehicle, who was a passenger, did not object, the consent was valid. *Id.* at 526-27. Here,

4

Valdes Diaz was present when the search commenced and offered no objection. The Court finds that Hernandez Triana gave valid consent to search and that Valdes Diaz's consent was not required and therefore **DENIES** Defendants' Motions to Suppress (Docs. 26, 42) to the extent they argue the evidence seized during the search should be suppressed because the search was non-consensual.

### III. Length of Detention

The Defendants argue that the traffic stop was unreasonably prolonged in violation of the Fourth Amendment. First, as a preliminary matter, the Court considers whether the initial stop was supported by at least reasonable suspicion as required by the Fourth Amendment. *Berkemer v. McCarty* 468 U.S. 420, 439 (1984) (holding that a routine traffic stop is more analogous to a *Terry* stop, which requires reasonable suspicion rather than the higher probable cause required by a formal arrest). The Court finds that the stop itself was supported by Massey's reasonable suspicion that the Defendants were violating Georgia's statute prohibiting obscured license plates. O.C.G.A. § 40-2-41. The dash cam video shows a tinted license plate cover on the vehicle, which the Court finds provided reasonable suspicion to justify a traffic stop. However, Defendants argue that the stop exceeded the scope of its initial purpose and became unreasonably prolonged due to the time it took Massey to complete several actions, including the time it took for Massey to run Hernandez Triana's criminal history, for a Spanish-speaking officer to arrive, and for Hernandez Triana to sign the written consent to search form. (Doc. 46 at 7-8.)

"[A] police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Rodriguez v. United States*, 135 S.Ct. 1609, 1612 (2015). "A seizure justified only by a police-observed traffic violation, therefore, 'become[s] unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission' or issue a ticket for the violation." *Id.* (quoting *Illinois v. Caballes*, 543 U.S. 405, 407 (2005)). "An officer may prolong a traffic stop beyond its legitimate purpose only in the limited circumstances where there is a 'reasonable and articulable suspicion illegal activity has occurred or is occurring' or if the driver consents." *United States v. Whitlock*, 493 F. App'x 27, 30 (11th Cir. 2012) (quoting *United States v. Pruitt*,

5

174 F.3d 1215, 1220 (11th Cir. 1999)); *see also United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990) ("In the absence of consent, the reasonableness of [a police officer's] decision to detain and search the vehicle in which [the defendant] was a passenger is governed by the principles set forth in *Terry v. Ohio*.").

Defendant Hernandez Triana suggests in his brief that Massey unreasonably prolonged the stop by asking for Hernandez Triana's criminal history over his radio. (*See* Doc. 46 at 7.) However, the Eleventh Circuit rejected this argument in *Purcell*. 236 F.3d at 1278 ("The request for criminal histories as part of a routine computer check is justified for officer safety. . . The inclusion of such a request in an otherwise valid computer check does not render it unconstitutional."); *see also Rodriguez*, 135 S.Ct. at 1615 (finding that ordinary inquiries performed during a routine traffic stop include "checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's registration and proof of insurance"). In *Purcell,* the Eleventh Circuit went on to hold that "so long as the computer check does not prolong the traffic stop beyond a reasonable amount of time under the circumstances of the stop, the inclusion of a request for criminal histories does not constitute a Fourth Amendment violation." *Id.* at 1279.[2]

Here, the evidence shows that, at most, Massey's running Hernandez Triana's criminal history prolonged the stop by around three minutes –from the time the sound of printing can be heard at minute 11:17 of the dash cam video to the time Massey exits his vehicle at minute 14:08. The Eleventh Circuit in *Purcell* explicitly held, "Fourteen minutes is not an unreasonable amount of time for a traffic stop. We have approved traffic stops of much longer duration." 236 F.3d at 1279. In light of that holding, the Court rejects Defendants' argument that Massey's inquiring about Hernandez Triana's criminal history during the course of the traffic stop unreasonably prolonged the traffic stop.

---

[2] The Court notes that *Rodriguez* did not alter this standard because the Court in *Rodriguez* distinguished activities related to the purpose of the traffic stop, including activities designed to protect officer safety, from activities aimed at "detect[ing] evidence of ordinary criminal wrongdoing." *Rodriguez,* 135 S.Ct. at 1615 (quoting *Indianapolis v. Edmond*, 531 U.S. 32, 40-41 (2000)). The *Rodriguez* Court held that a dog sniff that prolonged a traffic stop after completion of its purpose lacked "the same close connection to roadway safety as the ordinary inquiries." *Id.* at 1615. Here, the Court finds that the criminal history check had a close connection to the purpose of the traffic stop.

6

Defendants also argue that the time spent waiting for the Spanish-speaking officer to arrive and for Hernandez Triana to sign the written consent form unlawfully prolonged the stop. (Doc. 46 at 8.) "An officer conducting a routine traffic stop may request consent to search the vehicle." *Purcell*, 236 F.3d at 1281 (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 222 (1973)). Further, "[a]n officer may prolong a traffic stop beyond its legitimate purpose only in the limited circumstances where there is a 'reasonable and articulable suspicion illegal activity has occurred or is occurring' or if the driver consents." *United States v. Whitlock*, 493 F. App'x 27, 30 (11th Cir. 2012) (quoting *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999)); *see also United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990) ("In the absence of consent, the reasonableness of [a police officer's] decision to detain and search the vehicle in which [the defendant] was a passenger is governed by the principles set forth in *Terry v. Ohio*.").

Having already found that Hernandez Triana's consent was valid, the Court finds that because an officer may prolong a routine traffic stop for the purpose of executing a consensual search, it follows that a traffic stop may be prolonged for the reasonable amount of time required to obtain consent. Or, to put it another way, the Court finds that the traffic stop concluded when Massey handed Hernandez Triana the warning ticket, and everything that occurred thereafter was part of a consensual interaction because Hernandez Triana was free to leave. *See United States v. Geboyan*, 367 F. App'x 99, 101 (11th Cir. 2010) (holding that a traffic stop ended when the citation and the driver's documents had been returned to the driver and that the encounter became consensual from that point forward because the driver was free to leave); *see also United States v. Ramirez*, 476 F.3d 1231, 1238-40 (11th Cir. 2007).

Here, Massey was explaining the purpose of the search to Hernandez Triana in English from the time he handed the warning ticket to Hernandez Triana to the time Mejia, the Spanish-speaking officer, arrived. Therefore, there was no "down time," so to speak, during which the Defendants were simply waiting for Mejia to arrive so that consent could be obtained. Further, the total amount of time that elapsed between the completion of the traffic stop's objective and Hernandez Triana's giving consent was less than two minutes. The Court therefore rejects the Defendants' argument that the time spent waiting for the

7

Spanish-speaking officer to arrive and for Hernandez Triana to sign the written consent form unlawfully prolonged the stop. In summary, the Court finds that the traffic stop was not unreasonably prolonged and therefore **DENIES** Defendants' Motions to Suppress (Docs. 26, 42) to the extent they argue any evidence was tainted by an unreasonably prolonged detention.

## IV.     Suppression of Statements Made by Hernandez Triana

The Defendants also seek to suppress statements made by Hernandez Triana both before and after he was given a *Miranda* warning. (Docs. 26 at 6-8; 42 at 5.) The Government stated during the evidentiary hearing that it did not intend to introduce any of Hernandez Triana's post-*Miranda* statements at trial because he did not make any incriminating statements after signing a *Miranda* waiver. (*See also* Doc. 28 at 3.) In their post-hearing briefs, the Defendants focus on the statements Hernandez Triana made during the course of the traffic stop, which they contend became a seizure requiring a *Miranda* warning, and make no additional assertions or arguments relating to statements made by Hernandez Triana after he signed a *Miranda* waiver. Therefore, as to any statements made by Hernandez Triana after signing a *Miranda* waiver, the Court **DENIES AS MOOT** the Defendants' Motions to Suppress (Docs. 26, 42).

The Defendants argue that the statements Hernandez Triana made during the course of the traffic stop, which they contend became a seizure requiring a *Miranda* warning, should be suppressed. (Docs. 31 at 2; 46 at 1.) Specifically, the Defendants seek to suppress Hernandez Triana's statements that he was heading to Bowling Green, Kentucky. (Doc. 46 at 11.) The Government did not address this argument in its briefs. (*See* Docs. 28, 51.)

The Court notes that both of the times Massey asked Hernandez Triana where he was headed were before Massey explained and handed Hernandez Triana the warning ticket. Such questioning is within the scope of a valid traffic stop. *See, e.g.*, *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003) (involving a traffic stop during which the officer inquired as to the driver and passengers' destination); *see also Suarez*, 694 F.Supp. 926, 937 (S.D. Ga. 1988) (finding that O.C.G.A. §§ 40-13-53, 40-13-58 implicitly require an officer to ask questions regarding residency, occupation, and destination in order to determine whether a

driver will comply with the bond-forfeiture procedure typically followed upon service of a traffic citation). The Court finds that because the questions were related to the traffic stop and attendant safety concerns, they did not exceed the purpose of the stop or unreasonably prolong it, and therefore did not transform the situation into a custodial one requiring a *Miranda* warning. *Rodriguez*, 135 S.Ct. at 1614. The Court therefore **DENIES** the Defendants' Motions to Suppress statements made by Hernandez Triana during the course of the traffic stop (Docs. 26, 42).

V. **Conclusion**

For the reasons and findings stated herein, the Court **DENIES** Defendants' Motions to Suppress (Docs. 26, 42).

**SO ORDERED**, this 21st day of October, 2015.

/s /W. Louis Sands_____
**W. LOUIS SANDS, SR. JUDGE**
**UNITED STATES DISTRICT COURT**